Hackensack Savings Bank *v.* Morse.

THE HACKENSACK SAVINGS BANK

*v.*

DANIEL P. MORSE et al.

1. A sheriff's deed on a sale upon a common law execution takes effect in equity from the date of the sale.

2. Such a deed has the same effect in all respects as a deed of bargain and sale of that date made by the party against whom the execution issued.

3. A right of a creditor of a decedent to compel an executor, who is also a devisee, to execute a power of sale of land contained in the will for the purpose of paying testator's debts, may be lost by delay in enforcing it as against a judgment creditor of the executor and devisee who sells the land to satisfy his debt.

4. Testator, by his will, directed his executor, who was his son, to pay his debts out of his property, real and personal. Empowered him to sell his land and directed him to divide the proceeds between his son and daughter, his only heirs. The son and daughter took possession of the land by tenants, and occupied it as tenants in common for nine years after their father's death. A creditor of the deceased laid by and took no proceedings to enforce his right

during the same period, his debt being kept alive by payments by the son. At the end of this period a judgment creditor of the son caused execution to be levied upon his interest in the land and the same brought to sale by the sheriff. After the sheriff's sale, and before delivery of the deed, the son and executor sold the land as executor, and with the proceeds paid his father's creditor. *Held,* that the title under the sheriff's sale was superior to that under the executor's sale.

Final hearing on bill, answer and proofs.

*Mr. C. H. Voorhis,* for the complainant.

*Mr. John Linn,* for the defendant.

PITNEY, V. C.

This is a contest over the title of an equal undivided one-half part of certain real estate of which Peter R. Terhune, late of Bergen county, died seized in the year 1879.

By his will, made in 1878, he provides as follows:

"I order and direct my executor hereinafter named to pay all my just debts, funeral and testamentary charges as soon as can be after my decease out of my real or personal estate.

"I give and bequeath unto my wife Mary Ann the sum of five hundred dollars, to be paid to her after my decease, and I do direct that said legacy shall be in lieu of my wife's dower in my estate; also an annuity of one hundred and fifty dollars a year to be paid in half yearly payments as long as she remains my widow.

"I hereby authorize and empower my executor to sell and dispose of all my real and personal estate of which I may die seized, either at public or private sale, for such price as he shall deem proper, and give to the purchaser of the same a good, valid and absolute title thereunto.

"I give, bequeath and devise all the proceeds of my real and personal estate in manner following, that is to say, after paying the above-described legacy and annuity, one-half to my son Richard Paul Terhune and one-half to my daughter Margaret, the wife of Garret G. Oldis.

"I hereby constitute and appoint my son Richard Paul Terhune executor of this my last will and testament."

Richard P. Terhune and Margaret Oldis were the only children and heirs at law of the deceased. The former was largely in debt to his father at the testator's decease, and to other parties,

among them the complainant. Upon a settlement of his account as executor, made several years afterwards, it was found that he was indebted to the estate about $18,000, and that the estate, counting that indebtedness, was perfectly solvent, but that there were no other personal assets. He is indebted to his sister for her share of the residue.

The complainant recovered judgment against Richard P. Terhune in November, 1880, for over $3,000, but no levy was made upon the defendant's interest in the lands of which his father died seized until 1888, when complainant caused execution to be issued, directed to the sheriff of Bergen county, who, by virtue thereof, duly levied upon the right, title and interest of Richard P. Terhune in the lands in question, and proceeded to advertise the same for sale at public vendue on the 20th of June, 1888. The sale was then adjourned from week to week until the 29th of August, when the property was struck off to the complainant for the sum of $50.

One of the conditions of sale was that the deed should not be delivered until four weeks afterwards. This the complainant at the time claimed to be irregular and unusual, and asked that the conditions be made to provide for an earlier delivery of the deed, but the sheriff refused. Of this affair the sheriff gives the following account:

"My conditions of sale fixed four weeks as the time for the delivery of the deed; that is not the time I usually give in my conditions of sale, but it was by request of R. P. Terhune's counsel, or R. P. Terhune himself; I do not recollect which it was; it was not Mr. Linn, but it may have been Mr. Linn's associate counsel who made the request; Mr. Linn was present at the sale; objection was made to giving so long a time for the delivery of the deed; it was made by Mr. Voorhis, counsel for the bank; the objection was that the time was unusually long; and I said that I had promised for four weeks, and I would not forfeit it."

The sheriff further says that most of the adjournments of the sale were made at the request of Terhune, and this was admitted by the defendants. The sheriff's deed was executed and delivered September 27th.

Previous to the date of sale, application had been made in be-

half of R. P. Terhune to this court for an injunction restraining it. The application had been denied. Terhune also applied indirectly to his sister, Mrs. Oldis, and tried to induce her to apply to the chancellor to enjoin the sale, but she declined.

In the meantime, between the sale by the sheriff and the delivery of the deed, Terhune advertised the premises for sale by him as executor of Peter R. Terhune, deceased, at the courthouse, in Hackensack; and on the 15th of September, in pursuance of such advertisement, struck off the same to his son-in-law, Daniel P. Morse, one of the defendants herein, and on the 22d of September made and executed two deeds, by which he conveyed the whole of the lands to Morse—the first tract described in the bill for $3,000, including a mortgage of $2,000, and the residue of the lands described (and another tract of nine and eighty-eight hundredths acres not mentioned in the bill) for the sum of $80.

Under this conveyance Morse claims title paramount to the complainant's title under the sheriff's deed; and thereupon the complainant files its bill asking the court to declare Morse's title to be void and of no effect against its title derived under the sheriff's sale.

It attacks the exercise of the power under the will on two grounds. In the first place, it says that both Terhune and his sister had elected to hold the land as heirs at law of their father, the testator, and not to have it converted into money under his will and divide the proceeds; and that the complainant levied upon and sold the undivided one-half of the land as the property of Terhune, and is entitled to have him stand by his election.

In the second place, it says that the exercise of the power was not in good faith for any legitimate purpose under the will, but simply for the purpose of hindering and delaying the complainant in the collection of its debt.

The defence set up and proved that Peter R. Terhune, at the time of his death, was indebted to one Richard Romaine on a promissory note for $1,995; that Richard P. Terhune made payments on account of that debt from time to time, amounting in the aggregate to between $1,000 and $1,100, and that Mr.

Morse, in paying the purchase-money for the first tract of land, gave his check for $1,000 to the order of Richard P. Terhune, which was by him endorsed over to Richard Romaine, in full payment of his promissory note.   It does not appear, however, that Romaine was at the time, or had lately been, urging the payment of his debt or that the sale was made at his demand or request.   The proofs show that all he had ever done in the way of enforcing his claim was to issue a summons against Terhune out of a common law court.

The *bona fides* of this debt and its payment is not attacked, but as to it the counsel of complainant contends that Richard P. Terhune had in his hands ample assets of his father's estate to pay this note, and that Romaine, having waited several years without enforcing his remedy against the land, must be presumed to have waived and abandoned all claim against the estate of the testator, and to have agreed to look to Richard P. Terhune alone for the debt ; and that the circumstances show that the payment of this debt was not the real object of the sale.   Morse, the purchaser, who claims under the executor, admits that he had full notice of the complainant's judgment and of the sale by the sheriff prior to his purchase, and of the other facts in the case, and says that he made the purchase on the strength of the advice of counsel that the power of sale under the will would give him title superior to that of the sheriff's sale.

Upon this case complainant's counsel contends, in the first place, that the deed from the sheriff to it must take effect in equity as of the date of the sale, and that it must be construed as if R. P. Terhune himself had made and executed it.   In this contention I think he is right.   When complainant made its bid of $50 and was declared by the sheriff to be the purchaser, and signed the conditions of sale, it became, in equity, the owner of the interest levied upon and the judgment debtor became entitled to credit on the debt for the amount bid.   Nothing more was to be done by the purchaser in order to entitle it to its deed.   No confirmation of the sale was necessary.   The sheriff might well have executed and delivered his deed immediately.   The few days' delay, which is usual in such case, is merely to enable the

sheriff to prepare the deed and the purchaser to raise the pur-
chase-money. I refer to *1 Pom. Eq. Jur.* § *368 ; Haughwout* v.
*Murphy,* 7 *C. E. Gr. 531.* Certainly this court will not permit
the contrivance adopted in this case by the defendant in execu-
tion, with aid of the sheriff, of postponing the delivery of the deed,
in order to enable the debtor to execute the power of sale before
its delivery, to work any prejudice to complainant's rights.

So with regard to the effect of the sheriff's deed ; the statute
regulating sale of lands under executions (*Rev. p. 1043* § *7*)
declares that the sheriff's deed—

  "Shall transfer to and vest in the said purchaser as good and perfect an
estate to the premises therein mentioned as the person against whom the said
writ or writs of execution were issued was seized of or entitled to at or before
the said judgment, and as fully to all intents and purposes as if such person
had sold the said lands, tenements, hereditaments and real estate to such pur-
chaser, and had received the consideration money, and signed, sealed and de-
livered a deed for the same."

And see *Voorhis* v. *Westervelt, 16 Stew. Eq. 644, 646.* The
case, then, must be considered in all respects as if R. P. Ter-
hune had in his individual right and capacity made a deed of
conveyance to complainant on August 29th, 1888.

In the next place complainant contends that the effect of this
premise is to give it a superior title to that of the defendant,
resting its contention on the ground that the devise of the pro-
ceeds of the sale of the lands was in equal shares to the two
heirs at law ; and hence, those persons had the right to elect, and
had elected, to take the land in specie instead of the proceeds of
its sale, and that Terhune must be held to stand by his election
in all respects, of course, as if he had made a conveyance for
value. In this general contention I think the complainant is
right. *Gest* v. *Flock, 1 Gr. Ch. 115 ; Fluke* v. *Fluke, 1 C. E.
Gr. 478.*

So far as R. P. Terhune individually is concerned, I think it
entirely clear that he could not, after the sheriff's sale, in the
absence of any positive duty so to do, execute the power of sale
of his own accord merely, for his own convenience or pleasure,
for the purpose, for instance, of making a division of the pro-

ceeds between himself and his sister, or of preferring one creditor over another, for the reason that in his judgment one was more meritorious than the other. I think that under the circumstances of this case both he and his sister must be presumed to have elected to take the land as land. Probably Mrs. Oldis might, if she had acted promptly, have compelled a sale, and on such sale claimed the whole proceeds, on the ground that her brother owed her, as executor, more than his share of the proceeds of the sale; and on this ground it would have been perhaps proper for this court to interpose and enjoin the sheriff's sale upon a bill filed by Mrs. Oldis. But she declined to file any bill, and it is not claimed that any part of the proceeds of R. P. Terhune's share of the sale went to her, or is expected to go to her; and hence her equity cannot avail the defendant.

It is not claimed that the sale was made to subserve any right on the part of the widow.

The question, however, still remains, whether there was any other purpose for which the power of sale was intended to be exercised, which still existed, and under which a third party had a right to compel a sale. If such a right existed, I shall assume, for present purposes only, that Mr. Terhune could not defeat it by making a voluntary conveyance as an individual of his one-half interest to a third party, and that notwithstanding such conveyance, such purchaser would take it subject to the power.

The power of sale is not expressly given for any particular purpose, nor is it in its terms imperative. Counsel for the defendant contended that it was imperative by proper construction and considering the context, which shows certain purposes for which sale might be conveniently made; and hence he contends that the persons to be benefited by its exercise had the right to have it exercised. The only object, other than those above mentioned, for which the power might be exercised, is found in the first clause of the will, which directs the executor to pay testator's debts " as soon as can be after my decease out of my real or personal estate." But, as to this, I must repeat that in my judgment it could not be exercised by the executor merely for his

own convenience and at his own pleasure, after a lapse of nearly ten years and after a conveyance by him of his interest in the land as heir at law of his father. By executing a deed of conveyance for value he must be held to have deprived himself, so far as his own volition goes, of the right to exercise it. In other words, he could not, after the sheriff's sale, exercise the power to prefer another creditor over the complainant, merely because he thought that other creditor more meritorious than complainant. There must have been a superior right and power behind him which made it his duty against his will to make the sale, and that power must have been actually exerted. And, therefore, it seems to me that the crucial question is, whether the power was exercised in good faith for the purpose of paying a creditor who had an existing right to have it so exercised, and who was actually demanding that it be so exercised for his benefit.

The direction to pay debts found in this will is a very common one, and it is often accompanied by a power of sale, and yet I am not aware, and no case was cited showing, that, either the question whether, under such conjunction of clauses in a will, the creditors of the decedent have the right to ask a court of equity to compel the executor to sell, or, what is more important for present purposes, if such a right exists, within what time it must be exercised, has ever been judicially considered in this State.

Mr. Perry, in his *Treatise on Trusts* § *559*, states the rule to be, that a devise to executors of real estate and personal property in trust to pay debts does not produce the ordinary relation of trustee and *cestuis que trustent* between the executors and creditors, and does not affect the running of the statute of limitations, citing several cases from the English reports and from those of several States of the Union, other than New Jersey. The question was considered in England in several cases arising prior to the statute of the realm making lands assets for payment of all classes of debts. In *Jones* v. *Clark, 4 Cl. & F. 398*, it was held by the house of lords, on the motion of Lord Lyndhurst, that a bequest of personalty in trust to pay debts had no effect

on the rights of creditors; though it would be otherwise in the case of a devise of realty. And afterwards Lord Cottenham, in *Freake* v. *Cranefeldt, 3 Myl. & C. 501,* in delivering judgment, said: " The decision of the house of lords in *Scott* v. *Jones,* in which he entirely concurred, was a direct authority for holding that a direction in a will for payment of debts was merely inoperative, so far as the personal estate was concerned." And in *O'Connor* v. *Haslan, 5 H. of L. 177,* Lord Cranworth, in moving judgment, said: "As a general principle, it may be taken that a charge of debts upon personal estate, *where it merely directs that to be done which must have been done if no direction had been given, is simply inoperative.* It was so decided in the case of *Scott* v. *Jones,* which came before your lordship's house. *With regard to the charge of a testator's own debts upon the real estate, by his will, the effect is, that whereas the real estate could not, but for that charge, be liable for the payment of the debts, it is thereby made liable to them."*

And see the remarks of Vice-Chancellor McCoun in *Murray* v. *Mechanics Bank, 4 Edw. Ch. 573.*

The principle of these cases is, that the testator could not and therefore did not give his creditors any greater right in the property given in trust than the law gave them; that the law made the executors trustees for the creditors of the very property given in trust, and therefore the gift in trust was a nullity.

If real estate in New Jersey was by law assets for the payment of debts in the hands of the executor to the same extent and degree as personalty, the principle of these cases would apply here. But such is not the case. The liability of land to the payment of debts by our law is limited both in the *manner* of its subjection to such payment, and in the *time* within which it may with certainty be done. The creditor is in some degree subject to the neglect of the administrator, who may fail to procure the necessary order until after the expiration of the statutory year, or it may happen that the necessary deficiency of personal assets may not appear until the year is past, after which the rights of the assignee or judgment creditor of the heir may intervene. For these reasons, and in the absence of judi-

cial authority in our own State, I am unwilling to hold that the creditor in this and similar cases had not a right to ask a court of equity to compel the executor to apply the land to pay his debt.

But the same statutory system which brings me to this conclusion reminds me that it is the settled policy of the law of this State that the creditors of decedents should prosecute their claims against his estate promptly.

It seems to me that sound policy requires that powers of this sort should be exercised promptly, and if the parties for whose benefit the power is to be exercised fail to call it into action until after other rights have intervened, they must be considered as having waived their right.

Sir George Jessel, of whom it has been said that he had the principles of equity at his finger-ends, in *Peters* v. *Railway Co.*, *L. R.* (*18 Ch. Div.*) *430* (at *p. 434*), says that a power of this kind must be exercised within "a reasonable time" or not at all.

The indisposition of the courts to sustain titles founded on powers of sales which have lain dormant for many years is, I think, shown in *Moores* v. *Moores, 12 Vr. 440;* and see the opinion in *Sites* v. *Eldridge, 18 Stew. Eq. 632.*

Let us consider, then, whether Mr. Romaine, at the time of this sheriff's sale, had the right to ask for the exercise of the power contained in the will, and whether he was at that time demanding its exercise.

The only action ever taken by Romaine, so far as appears, was to sue Terhune at law. Upon the service of the summons Terhune made a small payment, and the suit was dropped. This occurred several years before the sale. It does not appear that Romaine at any time made any demand upon Terhune to make the sale in question, and when he was informed that it was to take place, he did not take sufficient interest in it to attend. The sale by the sheriff was duly advertised, and Mr. Romaine is chargeable with notice of such advertisement. He had ample time to interpose and assert his rights in the appropriate manner prior to the sheriff's sale, but neglected to do so. It seems to me that he must be presumed to have waived any claim he ever

had to the exercise of this testamentary power, and to have consented that the superior diligence of the bank should bear its natural fruit.

And further, it seems to me, that the logic of the circumstances carries the complainant's right still higher, and that even if it had been true that Romaine's right had not been lost by laches, and that he had actually demanded of Terhune that he should proceed to sell, but had done nothing further, trusting to Terhune's effecting such sale in advance of the sheriff's sale, still the sheriff's title would have prevailed, for the reason that in such case Romaine would have been bound by Terhune's laches. For it seems to me that Romaine was not bound to await the action of Terhune, but might and ought to have applied to the court for the enforcement of his rights. Such, it seems to me, was his only proper and safe course. As before observed, he is chargeable with notice of the proceedings taken by the complainant to enforce its judgment, and he should have brought suit to assert his rights. Having failed to do so, and trusted, possibly, to the action of Terhune, he is subject to the application of the maxim, *vigilantibus non dormientibus, jura subveniunt.*

Nor do I see that the case is at all affected by the element that Romaine, by force of the statute giving the orphans court power to sell lands to pay debts, as construed by the court of appeals in *Haston* v. *Castner, 4 Stew. Eq. 699, 700,* had a lien on these lands for the amount of his debt at the time of the sheriff's sale. In the first place, that lien could not be enforced or worked out except either by a direct proceeding by Romaine for that purpose, as suggested in *Haston* v. *Castner,* or by proceedings for sale taken in the orphans court. In fact, this statutory lien lost its priority over complainant's judgment by the mere operation of law—the lapse of the statutory year. *Den* v. *Hunt, 6 Hal. 1 ; Bockover* v. *Ayres, 7 C. E. Gr. 13.* And, in the second place, such lien is liable to be divested by a sale and conveyance by the heir or devisee at any time after a year, and a sale by the sheriff on an execution against the heir, as already shown, has the same effect as a conveyance by the heir or devisee himself.

It follows that the failure of the creditor to enforce his rights under the statute until after the title had passed away from the heir and devisee is fatal to his claim to the interposition of the court, and if we may consider Morse as subrogated to Romaine's rights he is still behind the execution creditor.

Nor has Morse any standing as a *bona fide* purchaser for value without notice. As before remarked, the proof is clear that he had actual notice of all the facts shown in the case, including Romaine's laches. But I do not think that such actual notice is necessary, but am of the opinion that a person taking title under such a power is put upon his inquiry and is chargeable with notice of all the facts affecting the execution of the power to which such inquiry would lead; such as the contents of the will; the rule of law that under such provisions the beneficiary might elect to take the land instead of the proceeds, and that third parties might acquire rights in the land by purchase from the beneficiary, or by judgment against them, and that such a third party in this case had acquired such rights; and that the right of a creditor, if any existed, to have the power of sale exercised for the purpose of paying him, might be and had been waived and lost by laches. Of all these matters, Morse, as well as Romaine, is chargeable with notice. But, in this case, as before remarked, Morse had actual notice, and took advice upon the facts, and acted thereon. If he was wrongly advised he cannot complain.

These reasons, after a careful examination of the case in all its aspects, have led me, contrary to my first impression and inclination, to the conclusion that the complainant has the better equity and must prevail.